**AMERICAN PARKING METER ADVERTISING, INC., Plaintiff,**

v.

**VISUAL MEDIA, INC., et al., Defendants.**

**Civ. A. No. 87–2010–Mc.**

United States District Court, D. Massachusetts.

Sept. 14, 1987.

On Motion For Reconsideration Oct. 5, 1987.

Joanne S. Beery, Towso, Md., G. Arthur Hyland, Jr., Murphy & Murphy, Hyannis, Mass., for plaintiff.

Walter K. McDonough, Fine & Ambrogne, Boston, Mass., for Shieldings and Willis.

Robert S. Potters, Potters & Sands, Boston, Mass., for W. Lincoln Bouvé.

Henry S. Dinger, Goodwin, Procter & Hoar, Boston, Mass., for Leonard S. Simon.

Thomas M. Dailey, Goodwin Procter & Hoar, Boston, Mass., Donald H. Green, Pepper, Hamilton & Sheetz, Washington, D.C., Michael T. Platt, Conrad J. Clark, Berman, Aisenberg & Platt, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER ON REQUEST FOR INJUNCTIVE RELIEF

McNAUGHT, District Judge.

Plaintiff American Parking Meter Advertising, Inc., in this action for patent infringement, asks for a preliminary injunction against Visual Media, Inc. The plaintiff is the exclusive licensee of a patent covering a parking meter advertising device resembling a small, curved metal billboard.

A parking meter (this is true, at least, with respect to those with which the Court is familiar) has a metal cover or "strap" which fits over the top of a clear "house" or "dome" within which the meter is enclosed. The patented device appears to be a replacement for the cover or strap. It has a "fan" (an integral part of the strap) on which an advertising display may be placed. The "fan" or "billboard" is installed conveniently in place of the plain metal strap. It is simple, and obviously doesn't cost much to make. The patent, No. 4,453,-325, issued June 12, 1984. The plaintiff American Parking has had its device installed on three thousand meters in the City of Baltimore. It has not been successful, to the present, elsewhere.

The defendant Visual Media has a device, the alleged infringing device, which has been referred to as the "Media Hat". It too is installed on existing parking meters. The "house" and strap of a meter is taken off, and a different "house" with a lexan "second floor", is substituted therefor. The "second floor" will hold a display which is therefore visible in both directions. It is, to me at least, more pleasing visually than the olive drab metal fan of the patented object. To an untrained person like myself, there appears to be no difference between the two which requires any spark of genius to conceive. One of them you can look through, and the ability to do so adds a bit of visual pleasure.

It was argued at the hearing on this matter that the Media Hat differs because the original house is removed, and the mode of attachment of the defendants' device requires employment of additional parts. It appears, however, that the same means are used to produce the same end product. The "hat" uses more parts, it is true. That would not be enough, in and of itself, to save it from a claim of infringement upon plaintiff's device. I conclude that there is a reasonable likelihood that the plaintiff will prevail on the claim that the meter hat infringes. The hat seems to read on Claims 14 and 15 of the patent in issue. While the plaintiff's device has not had striking commercial success, the defendants' appears to have the chance of a brighter future. The defendants have an opportunity at present to enter into a contract with the City of Philadelphia which, if it is executed, may net them as much as $50,000 a month. The personal contacts which defendants enjoy with executives in cities around the country are such that they may reasonably expect other contracts to follow, unless an injunction is entered in this case.

The validity of the patent in issue presents a problem which may be difficult to resolve at the time of trial. While we have had an opportunity only for a cursory glance at the prior art, and less than an

adequate opportunity to study the plaintiff's product, we do not have conclusive evidence of non-obviousness. We are not, however, called upon to make a decision upon validity or lack of validity of the patent at this stage. The question is: is there a reasonable likelihood that the plaintiff will prevail on the issue of validity and the answer for the moment appears to be "yes". Plaintiff for now must persuade us of the existence of the likelihood of prevailing. It is aided in this regard by the presumption of validity which would apply at a trial on the merits. At that trial, the burden of showing invalidity by clear and convincing evidence would have to be carried by the defendants. That presumption, and its effect upon plaintiff's present task, is sufficient to carry the present day for plaintiff on validity. The fact that defendants copied plaintiff's device indicates that there is a reasonable probability of success on the claim of infringement.

As for the balancing of harms which may occur if the injunction is granted and defendants are unable to enter into their contract with the City of Philadelphia, commercially, in the short run at least, defendants will suffer more greatly than the plaintiff. On the other hand, financial loss is not all that we must consider in balancing the harms. As the plaintiff has argued, if its patent is valid there would be irreparable injury if the defendants were permitted to continue with infringement during the pendency of this action. Patents are entitled to receive special protection. Delay may well become the equivalent of an involuntary license by the patent holder. *Teledyne v. Windmere Products, Inc.*, 433 F.Supp. 710, 195 U.S.P.Q. 354 (S.D.Fla.1977). Manufacture and sale of what is apparently an infringing product is irreparable harm. If the patent is valid, and no injunction should issue, there would be a loss of good will and potential revenue on plaintiff's part.

Along these lines, the plaintiff has also argued that defendant Visual Media has no funds or assets (by reason of security arrangements) with which to pay the plaintiff. I am not persuaded that this is necessarily so. Plaintiff, anyway, prevails on this issue and the public interest would be served by reason of protection of the rights of a patent holder.

The Court is satisfied that an injunction should issue but that the issuance should be conditioned upon the filing of a bond in the event that the defendant suffers damage by reason of an injunction issued improvidently. This subject was discussed at the time of the hearing. Plaintiff then suggested that its assets were such that it should not be required to post more than a bond in the amount of $250,000. While there may be some exaggeration on the prospects of defendants losing the sum of $50,000 a month in the event that the injunction issues, it does seem that a bond in the amount of $500,000, at least, is called for. The granting of injunctive relief, therefore, is conditioned upon the filing of a bond in that amount by the plaintiff.

SO ORDERED.

## ON MOTION FOR RECONSIDERATION

The defendant has been heard, in open court, on the motion for reconsideration of the Order dated September 14, 1987 (which granted injunctive relief conditioned on the filing of a bond in the amount of $500,000 by the plaintiff. Plaintiff's counsel heard the defendant's argument by reason of a speaker-phone arrangement).

Plaintiff was given one week to reply with argument on cassette tape. The Court having had the opportunity to listen to the tape, and both arguments having been given consideration, the motion of defendant is DENIED.

Plaintiff will submit a form of preliminary injunction for consideration by the Court. That form will restrain defendants from selling, franchising, leasing or offering to install for profit or for test marketing, its parking meter advertising device known as the "Meter Hat" until further order of the Court.